UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE LUIS VAZQUEZ, JR.,

    Plaintiff,

v.                                                Case No. 8:24-cv-2219-WFJ-LSG

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The plaintiff George Luis Vazquez, Jr., moves to reverse the denial of his claim for Social Security Disability Insurance ("SSDI") benefits. Docs. 1, 12. Because I find that the ALJ erred in assessing the available medical opinion evidence, I recommend reversing in part the ALJ's decision and remanding this matter for further proceedings.

### I.   Procedural Background

In 2021, Vazquez applied for a period of disability and disability insurance benefits. Tr. 18. The Commissioner denied each claim initially and on reconsideration. Tr. 18. An administrative hearing occurred telephonically, during which Vazquez appeared and testified. Tr. 18, 37–74. The decision was unfavorable. Tr. 15, 30. Vazquez sought review by the Appeals Council, which denied the request.

Tr. 1. Vazquez timely filed a complaint in this Court, Doc. 1, and the case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual background and the ALJ's Decision

Born in 1983, Vazquez was thirty-seven years old on the day he was last insured. Tr. 28, 97. His impairments include spine disorder, morbid obesity, mild intermittent asthma, type II diabetes mellitus, hyperlipidemia, post-traumatic stress disorder ("PTSD"), and depression. Tr. 21. Vazquez graduated from high school in 2002. Tr. 29; 226. His occupational history includes work as an assistant store manager, a security guard, pharmacy technician, caterer helper, deli clerk, and taxi driver. Tr. 28.

The ALJ concluded that Vazquez satisfies the insured status requirements of the Social Security Act through September 30, 2020, and that Vazquez has engaged in no substantial gainful activity since January 19, 2019, through his date last insured. Tr. 20. After a hearing and reviewing the evidence, the ALJ determined that Vazquez has severe impairments, including spine disorder and morbid obesity. Tr. 20. Nonetheless, the ALJ determined that Vazquez suffers no impairment or combination of impairments that "meets or medically equals" the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22. The ALJ then concluded that Vazquez has a residual functional capacity to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a), except that "the claimant is further limited to frequent bilateral operation of foot controls; occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing,

stooping, kneeling, crouching, and crawling; and occasional exposure unprotected heights, moving mechanical parts, and vibration" Tr. 23.

In formulating Vazquez's residual functional capacity, the ALJ considered Vazquez's testimony, as well as a "function report" Vazquez completed on December 17, 2021. Tr. 24. The ALJ found that Vazquez's testimony was consistent with both the report and his subjective complaints. Tr. 24. However, the ALJ found that Vazquez's statements about the "intensity, persistence, and limiting effects" of his symptoms was not "entirely consistent with the medical evidence." Tr. 26. A vocational expert testified that, although Vazquez could not perform his past relevant work, Vazquez could perform other jobs in the national economy, including as a "charge account clerk," a "document preparer," or a "telephone order clerk." Tr. 29; 67–73. Thus, based on Vazquez's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found Vazquez not disabled. Tr. 30.

### III.   Standard of Review

Entitlement to SSDI benefits requires a "disability," which means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" likely to result in death, lasting for at least twelve months, or expected to last more than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" means a condition resulting from "anatomical, physiological, or psychological

3

abnormalities . . . demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Social Security Administration ("SSA") regulations establish a five-step "sequential evaluation process" to determine whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must determine whether the claimant (1) is engaged in "substantially gainful activity"; (2) has a severe impairment; (3) has a severe impairment that "meets or equals" the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform the claimant's past relevant work; and (5) can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant may obtain benefits only if unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

If substantial evidence and applicable law support the Commissioner's decision, this Court must affirm. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law

4

correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the scope of review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Vazquez argues that the ALJ failed to properly evaluate the medical opinion evidence in determining Vazquez's residual functional capacity. Doc. 12 at 17. "In making the [residual functional capacity] determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Barrio v. Comm'r of Soc. Sec. Admin.*, 394 F. App'x 635, 637 (11th Cir. 2010); 20 C.F.R. § 404.1545(a)(1), (3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.").

Vazquez argues that the ALJ "cherry picked" the record evidence. Doc. 12 at 25. Specifically, Vazquez contends that the ALJ ignored two medical opinions that are inconsistent with the residual functional capacity formulated by the ALJ. Doc. 12 at 19–20. Next, Vazquez argues that the ALJ gave too much weight to two "stale" medical opinions that fail to consider his post-DLI[1] surgical history, including the

---

[1] Meaning "date last insured," which is September 30, 2020. Tr. 18.

evidence of his herniated discs. Doc. 12 at 21–22. Finally, Vazquez argues that he suffers more mental limitations than the ALJ included in his residual functional capacity. Doc. 12 at 23–24. In response, the Commissioner argues that the ALJ properly evaluated the medical evidence and that substantial evidence supports the ALJ's determination that Vazquez is not disabled. Doc. 13.

### A. The ALJ's evaluation of medical opinion evidence

Both Vazquez and the Commissioner concede that the revised SSA regulations published in 2017 apply to this case because Vazquez filed his claim on November 10, 2021. *See* 20 C.F.R. § 416.920c. The revised regulations require an ALJ to apply the same factors when considering all medical sources rather than assigning specific, controlling weight to each treating physician's opinion if the opinion is well-supported and consistent with other record evidence. *Schofield v. O'Malley*, No. 8:22-cv-2384-CEH-SPF, 2024 WL 1464296, at *4–*5 (M.D. Fla. Jan. 20, 2024), *R&R aff'd*, 2024 WL 1270500 (M.D. Fla. Mar. 26, 2024). Under the 2017 regulations, the ALJ must consider the "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict a medical opinion or prior administrative medical finding'" when evaluating medical opinions and prior administrative findings. *Id*. at *5 (quoting 20 C.F.R. § 404.1520c(c)). As a result,

> an ALJ need not assign specific evidentiary weight to medical opinions based on their source. While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors. And, in assessing the supportability and consistency of a medical opinion, the

6

>  regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source.

*Id*. (citations omitted).

    1.  *The medical opinions of Dr. Ali Zahrai*

Vazquez contends that the ALJ "completely ignored" two medical opinions offered by independent medical examiner Dr. Ali Zahrai about Vazquez's physical limitations. Doc. 12 at 19. According to Vazquez, the first of Dr. Zahrai's opinions, dated June 2, 2022, explains that Vazquez's symptoms are consistent with a failed back surgery, restricts his ability to lift objects weighing more than twenty-five pounds, and prevents him from excessive or repetitive bending, lifting, and twisting. Doc. 12 at 19. The second of Dr. Zahrai's opinions revised the first and affirmed the restrictions on Vazquez's mobility, limited Vazquez to lifting only twenty pounds, and noted that Vazquez's pain-relieving stimulator no longer worked. Doc. 12 at 19–20. In response, the Commissioner argues that Dr. Zahrai's opinions are irrelevant to determining whether Vazquez was disabled on or before September 30, 2020, because nothing in Dr. Zahrai's opinions "indicated that his opinion applied specifically to the relevant period before expiration of [Vazquez's] insured status or was for any purpose other than to review [Vazquez's] condition as of the date of the examination." Doc. 13 at 12.

The ALJ nowhere mentions Dr. Zahrai's opinions in her decision. As the Commissioner argues, both of Dr. Zahrai's evaluations occurred after Vazquez's last

7

day of SSDI coverage. Tr. 1229, 1241. A medical opinion provided after a plaintiff's last day of coverage and not based on the plaintiff's condition during the insured period is "not particularly relevant to whether [the plaintiff] was disabled." *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 14 (11th Cir. 2012). However, Dr. Zahrai's opinion appears based in part on a 2018 motor vehicle accident, which resulted three surgeries. Tr. 1231–32; 1244–45. In his treatment plan notes, Dr. Zahrai says that Vazquez's pain and symptoms began with the 2018 accident and "are in keeping with a failed back surgery" that followed in 2020. Tr. 1231–32. Further, Dr. Zahrai says in his May 25, 2023, evaluation that Vazquez had not recovered from the "work-related injuries from the [2018] motor vehicle accident" that caused Vazquez's back injury and that Vazquez had not "reached maximal medical improvement with respect to work-related back injuries." Tr. 1245. Thus, the two evaluations could constitute relevant, retrospective opinions about Vazquez's condition before his date last insured. *See Hughes*, 486 F. App'x at 14; *Hernandez v. Comm'r of Soc. Sec.*, 6:21-cv-305-EJK, 2022 WL 10208157, at *2 (M.D. Fla. May 12, 2022) ("Retrospective diagnosis may be considered if it is validated by evidence within the relevant time period."). Because the ALJ nowhere mentions these opinions, I cannot determine whether the ALJ applied the correct legal standard in evaluating this evidence. *Hernandez*, 2022 WL 10208157, at *2.

    2. *The prior administrative findings*

Vazquez asserts that the opinions of a state agency physicians Dr. Robert Nuss and Dr. Bradley Stephan were "stale" and "undermined" by Vazquez's surgical

8

history and objective medical evidence. Doc. 12 at 22. Thus, Vazquez argues that the ALJ assigned "too much weight" and relied improperly on those opinions because "stale" opinions cannot constitute substantial evidence for a residual functional capacity assessment. Doc. 12 at 22. The Commissioner, in response, notes that the administrative findings of the state agency medical consultants were consistent with the other record evidence about Vazquez's limitations. Doc. 13 at 13.

Although an ALJ is not required to adopt prior administrative findings, she must consider the federal and state agency medical consultants as expert opinion evidence. 20 C.F.R. § 404.1513a(b)(1). Accordingly, the SSA regulations require the ALJ to "analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Schofield*, 2024 WL 1464296, at *5 (citations omitted).

Under the 2017 SSA regulations, "supportability" means that "the more relevant the objective medical evidence and supporting explanations from the medical source, the more persuasive the medical opinion will be." *Yetter v. Comm'r of Soc. Sec.*, No: 2:24-cv-758-JLB-KCD, 2025 WL 1872574, at *1 (M.D. Fla. Jul. 8, 2025) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (adopting R&R). The regulations obligate an ALJ to not only determine whether a prior administrative finding is supported but "explain how [she] considered the supportability and consistency factors" in her determination. 20 C.F.R. § 404.1520c(b)(2). In other words, "the new regulations require an explanation [for the supportability and consistency factors], even if the ALJ (and the Commissioner) believe an explanation

9

is superfluous." *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020), *R&R aff'd*, 2020 WL 1955341 (M.D. Fla Apr. 23, 2020).

Here, the ALJ explains that she considered the prior administrative findings from the state agency medical consultants at the initial and reconsideration levels. Tr. 26–27. The ALJ found the administrative findings persuasive. Tr. 27. Although the ALJ repeatedly notes the prior administrative findings' consistency with Vazquez's medical records, she offers no discussion of supportability. The ALJ's conclusion that the findings are persuasive provides only that they were "consistent with the medical evidence of record during the relevant period." Tr. 27. Without more, the ALJ's determination fails to satisfy the requirements of 20 C.F.R. § 404.1520c(b)(2).

### B. Consideration of Vazquez's mental limitations

Vazquez argues that the ALJ failed to include all of his mental impairments in the residual functional capacity assessment. Doc. 12 at 22–23. A person's "residual function capacity" is "the most that [the person] can still do despite [the person's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). To determine a plaintiff's residual functional capacity, the ALJ must review "all the record evidence, including evidence of non-severe impairments." *Barrio v. Comm'r of Soc. Sec. Admin.*, 394 F. App'x 635, 637 (11th Cir. 2010). An ALJ must incorporate mental impairments into her assessment of residual functional capacity. 20 C.F.R. § 404.1520a(e)(4); *Moore v.*

10

*Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005). Failure to do so requires remand. *Moore*, 405. F.3d at 1214.

SSA regulations require the use of a "special technique" known as the Psychiatric Review Technique ("PRT") when evaluating a mental impairment. *Id.* at 1213 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a, 416.920a. This process involves assessing how the claimant's mental impairment affects (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The SSA employs a five-point scale to rate a person's impairment in each area, which scale includes "none," "mild," "moderate," "marked," and "extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

In conducting the PRT at step three, the ALJ found that Vazquez has the medically determinable impairments of PTSD and depression, which were "considered singly and in combination." T. 21. The ALJ determined that these mental impairments did not cause "more than a minimal limitation" on Vazquez's ability to engage in basic work activities and deemed the impairments "nonsevere." Tr. 21. The ALJ explained that though Vazquez alleged difficulty with remembering, understanding, following instructions, and completing tasks, the record demonstrated—along with Vazquez's own assertions—that Vazquez had no issues with basic day-to-day tasks; with providing information about his health and work history; with remembering; or with complying with medical treatment. Tr. 21. The ALJ also found that Vazquez has only "mild limitations" while interacting with

11

others and noted that despite his claims of difficulty engaging in social activities, Vazquez's statements and medical evidence show his ability to get along with others, shop, spend time with family or friends, attend church, and have a "good rapport" with medical providers. Tr. 21. The ALJ concluded that Vazquez has only a mild limit on his ability to concentrate, persist, or maintain pace and noted that, despite Vazquez's assertion that he has trouble focusing or following instructions, the record showed no inability to concentrate. Tr. 22. The ALJ found that, based on objective record evidence of his ability to care for himself, Vazquez has no limit in managing himself or adapting. Tr. 22.

     Based on that assessment, the ALJ determined that Vazquez's mental impairments create only a "mild" limitation in any of the functional areas described in 20 C.F.R. §§ 404.1520a. The ALJ specifically notes that her assessment "reflects the degree of limitation" she found in Vazquez's mental function analysis. Tr. 22. This category of mental functioning includes a plaintiff's ability to focus attention on work activities and stay on task at a sustained rate. Program Operations Manual System ("POMS"), § DI 34001.32 at E.3. A "mild limitation" means that a person's functioning in this area on a sustained basis is "slightly limited." POMS, § DI 34001.32 at F.2 (describing five rating points used to satisfy the paragraph B criteria). Because the ALJ found that Vazquez possesses neither two "marked" limitations nor an "extreme" limitation, the ALJ held that Vazquez has no impairment that "meets or equals" one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Accordingly, at step three, the ALJ found Vazquez not "disabled." Tr. 22.

An ALJ need not include mental limitations in a residual functional capacity if a plaintiff suffers only a mild mental impairment. *Dyer v. Comm'r of Soc. Sec.*, No.: 3:23-cv-1416-DNF, 2024 WL 4589789, at *4 (M.D. Fla. Oct. 28, 2024) (referencing *Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022)). Here, the ALJ considered and found persuasive the psychological assessments demonstrating that Vazquez suffers no work-related limitations based on his mental impairments. Tr. 27–28. Because substantial evidence supports the ALJ's finding that Vazquez suffers only mild limitations based on his mental impairments, I find no error. Further, I agree with the Commissioner's argument that the ALJ would have had to rate Vazquez's mental impairments beyond "mild" to warrant any finding that he suffered a "severe mental impairment." *See* Doc. 13 at 15.

## V. Conclusion

Accordingly, I recommend an order (1) reversing ALJ's decision in part based on a legal error in the ALJ's evaluation of medical opinion evidence and prior administrative findings of the state agency medical consultants and (2) remanding this matter to the Commissioner for further proceedings.

**REPORTED** in Tampa, Florida this 15th day of July, 2025.

_____
LINDSAY S. GRIFFIN
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the day of service of this report either to file written objections to the proposed findings and recommendation or to seek an extension of the fourteen-day deadline. 28 U.S.C. § 636(b)(1)(C). Under Eleventh Circuit Rule 3-1, a party failing to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  If the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.